IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **STARNES DAVIS FLORIE, LLP,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 12-0387-WS-N |
| ) | |
| **GOS OPERATOR, LLC,** *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This matter comes before the Court on defendants' Motion for Leave of Court to File Amended Complaint (doc. 4) and accompanying Motion to Remand (doc. 5). The Motions have been briefed and are now ripe for disposition.[1]

**I.      Relevant Background.**

This is a case about unpaid legal fees. Plaintiff, Starnes Davis Florie LLP ("Starnes"), filed this action in Mobile County Circuit Court against no fewer than nine named defendants, to-wit: GOS Operator, LLC; Gordon Oaks Healthcare Center; Gordon Oaks Memory Care Community; Gordon Oaks Specialty Care Assisted Living; GOA Operator, LLC; GO ATM, LLC; Mission Health of Georgia, LLC; Scott Feuer; and Bryan Crino.

The well-pleaded allegations of the Complaint identify three causes of action, all sounding in state law. In particular, Count I is a claim for breach of contract against all defendants, in which Starnes alleges that "Defendants have breached the contracts with Plaintiff by failing to pay Plaintiff for legal services rendered and costs incurred by Plaintiff in providing

---

[1] Plaintiff's Reply (doc. 14) in support of its Motions clocks in at an unwieldy 23 pages. This is a problem because the Local Rules provide that "[a] reply brief by movant shall not exceed fifteen (15) pages in length." LR 7.1(b). Plaintiff did not request leave to exceed this page limit, and made no showing why 15 pages would not be sufficient, particularly given the substantial repetition between plaintiff's principal brief and its reply. Nonetheless, the Court in its discretion will accept the reply in its current form, provided, however, that plaintiff's counsel must be mindful of applicable page limitations henceforth.

legal services to Defendants as agreed under these contracts." (Doc. 1-1, ¶ 19.)  Count II alleges unjust enrichment / quantum meruit, on the theory that defendants enjoyed the benefits of the legal services provided by Starnes without paying for same.  And Count III is a fraud claim centering on the allegation that "Defendants retained the Plaintiff to provide legal services for them and falsely represented to Plaintiff that they would pay Plaintiff for legal services rendered."  (*Id.*, ¶ 28.)  Nowhere in the Complaint are there claims or allegations that defendants engaged in fraudulent misrepresentation or suppression with respect to the execution of a certain engagement letter dated December 22, 2011.

On June 8, 2012, defendants timely removed this action to this District Court.  Their Notice of Removal (doc. 1) predicated federal jurisdiction on the diversity provisions of 28 U.S.C. § 1332.  Following removal, the undersigned *sua sponte* inquired into subject-matter jurisdiction and, upon supplementation of the record by defendants, satisfied itself that the amount in controversy exceeds $75,000 (in that plaintiff seeks to recover unpaid legal fees of approximately $158,000) and that there is complete diversity of citizenship (in that all defendants are solely deemed citizens of Florida for diversity purposes, and there is no indication or reason to believe that Starnes is a citizen of Florida).[2]

The very same day that defendants removed this action to federal court, several defendants (not including GOS Operator, LLC) filed motions to dismiss in state court.[3]  Those

---

[2] Where, as here, parties include unincorporated associations such as LLPs or LLCs, those entities are deemed citizens of any state of which any of their partners or members are citizens.  *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004).  Defendants did not know, and would not be expected to know, the citizenship of all of Starnes' partners.  Clearly, many (if not all) of Starnes' partners are citizens of Alabama, inasmuch as Starnes is an Alabama limited liability partnership whose only offices are located in Birmingham and Mobile, Alabama.  The Order entered on July 30, 2012 directed plaintiff's counsel, as officers of the court, promptly to disclose the existence of any Starnes partners who are or may be Florida citizens for diversity purposes, so as to enable the Court to reassess whether diversity jurisdiction properly lies.  (Doc. 12, at 2.)  Plaintiff's counsel did not respond; therefore, the Court assumes that no Starnes partners are Florida citizens.  In that case, Starnes is not a Florida citizen, and complete diversity exists at this time.

[3] Defendants' decision to file their motions to dismiss in state court when they were removing the case to federal court that day is perplexing.  Indeed, the court file would have been clearer and cleaner had defendants removed first, then filed their Rule 12(b) motions directly in federal court (the court they are asking to adjudicate such motions) post-removal.

motions to dismiss filed by GOA Operator, LLC; GO ATM, LLC; Mission Health of Georgia, LLC; Scott Feuer; and Bryan Crino were rooted in the notion that none of them were signatories to the December 22 engagement letter with Starnes (the "Letter") concerning payment of fees. (*See* docs. 8-3, 8-4, 8-5, 8-6.)  For example, GO ATM and GOA Operator argued in their motion to dismiss that (i) Starnes was retained by GOS Operator alone; (ii) GO ATM and GOA Operator did not sign the Letter and did not give permission for anyone to do so on their behalf; and (iii) "the person authorized and empowered to sign the Starnes engagement letter was Gerald McAuliffe who was employed by GOS and was authorized to engage Starnes on behalf and for the benefit of GOS alone."  (Doc. 8-5, ¶¶ 4-7.)[4]  These motions to dismiss relied heavily on an affidavit executed by Gerald B. McAuliffe.  During all relevant times, McAuliffe (an Alabama citizen who is not presently a defendant in this case) was employed as Manager by defendant GOS Operator.  In his affidavit, McAuliffe averred that he was authorized and empowered to sign the Letter "for legal services to be provided by Starnes … to GOS Operator" and that he "did not represent to Starnes … that [he] was signing the engagement letter for anyone other than GOS Operator."  (Doc. 8-5, at 8.)  The McAuliffe affidavit was reinforced by an affidavit prepared by defendant Bryan Crino, in which he averred that "Mr. McAuliffe was not authorized to and did not sign the engagement letter with Starnes for or on behalf of anyone other than GOS."  (Doc. 8-5, at 22.)  So the point animating these motions to dismiss is that defendants such as GO ATM and GOA Operator cannot be on the hook for the legal fees in question because the Letter was executed solely by GOS Operator, not any other defendants.[5]

---

[4] As a factual matter, the Letter states in the first paragraph that it confirms Starnes' representation of "Gordon Oaks Healthcare Nursing Home; Gordon Oaks Specialty Care Assisted Living; GOS Operator, LLC; GOA Operator, LLC; GOATM, LLC; Mission Health of Georgia; Doris Clink; Scott Feuer; and Brian Crino as counsel in connection with the above-referenced matter."  (Doc. 8-5, at 23.)  There was only one signature block in the Letter for defendants.  That block was signed by McAuliffe, who wrote beneath his signature "GOS Operator, LLC" without explanation or amplification.  (Doc. 8-5, at 24.)  Apparently, no one on either side explored or discussed the potential discrepancy between McAuliffe's writing "GOS Operator" under his signature and the fact that the Letter listed nine entities and persons as being represented by Starnes pursuant to the Letter (and bound by such Letter).  Predictably, this contractual ticking time bomb exploded into this lawsuit.

[5] This distinction may be critically important to Starnes' ability to recover in this case.  After all, Starnes alleges that defendant Scott Feuer has informed it "that GOS was effectively insolvent."  (Doc. 4, at 4.)  And the Crino affidavit confirms that GOS "ceased to (Continued)

The latest jurisdictional wrinkle in the case occurred on July 9, 2012, some 31 days after removal, when Starnes requested leave to amend its Complaint to refine and expound on its fraud theory of liability, and to name as a new defendant Gerald B. McAuliffe.  In particular, Starnes seeks to add a claim of misrepresentation against McAuliffe, based on allegations that McAuliffe falsely "represented to Plaintiff that he was signing the December 2011 Letter of Engagement on behalf of the entities and individuals named in that document and that each of them would be obligated for the payment of expenses and fees."  (Doc. 4-1, ¶ 36.)  Starnes would also add a suppression cause of action against all defendants, alleging that "Defendants suppressed the fact that Mr. McAuliffe's signature was not intended to bind each and every entity and individual named in that document."  (*Id.*, ¶ 42.)  The Amended Complaint would also assert claims of promissory fraud (on similar theories to that set forth in the original Complaint) and conspiracy.

Ordinarily, amendments are freely granted at this stage of the proceedings pursuant to Rule 15(a)(2), Fed.R.Civ.P., in the interests of justice.  The rub here is that McAuliffe is an Alabama citizen, and is therefore non-diverse from Starnes.  If McAuliffe were added as a defendant, then all parties agree that federal jurisdiction would be destroyed and this Court would be compelled to remand this action to Mobile County Circuit Court pursuant to 28 U.S.C. § 1447(e).[6]  For that reason, defendants oppose the proposed amendment and urge the Court to deny same, so as to preserve their properly-exercised choice of forum in federal court.  For its part, however, plaintiff maintains that its proposed amendment is proper.

---

operate in or about March, 2012."  (Doc. 8-5, at 21.)  So if the now-defunct GOS Operator is the lone defendant contractually obligated to pay Starnes' fees, then as a practical matter Starnes may be unable to recover a dime, given GOS Operator's apparent financial woes.  By contrast, if other named defendants may be deemed signatories to the Letter (and bound thereby), then Starnes may well be able to recover from them the unpaid attorney's fees accrued in the underlying matter.

[6]   Defendants expressly recognize this fact, writing in their brief that McAuliffe's joinder "would, without dispute, defeat the diversity necessary for this Court to have the jurisdiction to proceed.  If the motion to amend … were to be granted, the case would have to be remanded to state court."  (Doc. 13, at 9.)  Unquestionably, then, Starnes' motion to amend has cataclysmic jurisdictional implications and, if granted, will be fatal to the ability of this action to proceed in federal court.

## II.     Analysis.

### A.     The § 1447(e) Framework and Relevant Factors.

When faced with a diversity-destroying motion such as Starnes' in a removed action, a district court "should scrutinize that amendment more closely than an ordinary amendment." *Linares v. Home Depot U.S.A., Inc.*, 2012 WL 1441577, *2 (S.D. Fla. Apr. 26, 2012) (citation and internal quotation marks omitted). Thus, in determining whether to grant Starnes leave to amend the Complaint to add a non-diverse defendant, this Court's analysis is informed not by the liberal amendment principles of Rule 15(a)(2), but instead by the discretionary provisions of 28 U.S.C. § 1447(e). *See Ingram v. CSX Transp., Inc.*, 146 F.3d 858, 862 (11th Cir. 1998) (where plaintiff sought to amend complaint post-removal to join a defendant that would destroy complete diversity, "in determining whether to grant [plaintiff]'s motion, the district court should have considered 28 U.S.C.A. § 1447(e)"). That statute states as follows: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e).

"Decisions applying § 1447(e) have made clear that the statutory language means just what it says." *Portis v. Wal-Mart Stores, Inc.*, 2007 WL 3086011, *2 (S.D. Ala. Oct. 19, 2007). Where, as here, § 1447(e) is applicable, this Court is "left with only two options: (1) deny joinder; or (2) permit joinder and remand [plaintiff]'s case to state court." *Ingram*, 146 F.3d at 862 (clarifying that a district court has no discretion to add a non-diverse defendant, then "retain jurisdiction and decide the case on the merits"). This is an all-or-nothing proposition. *See Smith v. White Consol. Industries, Inc.*, 229 F. Supp.2d 1275, 1278 (N.D. Ala. 2002) ("[A]fter a case has been properly removed to federal court, if a plaintiff seeks to amend the complaint in a way that would destroy jurisdiction, the court has discretion to deny the amendment and maintain jurisdiction, or grant the amendment and remand the case to state court. What the court cannot do is allow an amendment that destroys federal jurisdiction and exercise jurisdiction over the case."). The determination of which of these options is more appropriate in a particular case "is left to the discretion of the district court." *Fontainebleau Gardens Condominium Ass'n, Inc. v. Pacific Ins. Co.*, 768 F. Supp.2d 1271 (S.D. Fla. 2011) (citations omitted).

In evaluating whether to permit joinder pursuant to § 1447(e), district courts balance the equities by reference to the following factors: "(1) the extent to which the purpose of the

amendment is to defeat federal jurisdiction, (2) whether the plaintiff has been dilatory in asking for the amendment, (3) whether the plaintiff will be significantly injured if the amendment is not allowed, and (4) any other factors bearing on the equities." *Scipione v. Advance Stores Co.*, 2012 WL 3105199, *2 (M.D. Fla. July 31, 2012) (citations and internal quotation marks omitted); *see also Worley v. Pfizer, Inc.*, 535 F. Supp.2d 1252, 1255 (M.D. Ala. 2008) (reciting factors). "This framework is designed to facilitate the balancing of the defendant's interest in maintaining a federal forum with the competing interest disfavoring parallel lawsuits in federal and state courts." *Holiday Isle, LLC v. Clarion Mortg. Capital, Inc.*, 2008 WL 1756369, *2 (S.D. Ala. Apr. 11, 2008).

### B.     Application of § 1447(e) Factors.

The first factor in the § 1447(e) equity-balancing exercise is the extent to which the purpose of the amendment is to defeat federal jurisdiction. Defendants insist that this is precisely Starnes' purpose in attempting to join McAuliffe as a defendant at this time. After all, defendants say, Starnes knew of McAuliffe's involvement as far back as December 22, 2011, the date on which he executed the Letter, yet plaintiff did not seek to sue him until July 2012, after defendants removed the case to federal court and plaintiff had need of a non-diverse defendant.

Plaintiff has the better argument on this point. Starnes wants to sue McAuliffe for misrepresentation not because McAuliffe signed the Letter, but because he neglected to apprise Starnes that he lacked authority to sign on behalf of anyone other than GOS Operator. As plaintiff explains, it was unaware of these constraints on McAuliffe's authority until it received the June 8 affidavits accompanying the motions to dismiss filed in state court. This was new information that Starnes did not have prior to removal to federal court, and therefore could not reasonably have been part of the original Complaint.[7] And it was this revelation (*i.e.*, that

---

[7] Defendants offer a half-hearted argument to the contrary, suggesting that because Feuer told Starnes before the original Complaint was filed that GOS Operator was the only client, Starnes must have inferred that McAuliffe lacked the capacity to obligate any defendant other than GOS Operator when he signed the Letter. (Doc. 13, at 11.) This reasoning is unpersuasive, and would have required Starnes to make a sizeable logical leap without any supporting facts on which to do so. To make such a cavalier assumption in the original Complaint could have been problematic for Starnes under Rule 11. The Court will not fault plaintiff for not making such a leap, but instead concludes that defendants' argument does not undermine plaintiff's showing that it did not know of the constraints on McAuliffe's authority to bind other defendants until it reviewed the June 8 affidavits.

McAuliffe never had authority to sign the letter on behalf of anyone other than GOS Operator) – not the removal to federal court – that prompted Starnes to seek to amend its pleading to assert claims against McAuliffe.  Under these circumstances, the Court imputes no nefarious, forum-shopping motivation to plaintiff's request to amend the Complaint.[8]  In the absence of any reason to believe that the purpose of Starnes' amendment is to defeat federal jurisdiction, this factor favors allowing the joinder of McAuliffe.  *See generally McReynolds v. Cotton States Ins.*, 2005 WL 2146034, *3 (M.D. Ala. Aug. 31, 2005) (recognizing that "Courts have generally entertained amendments that destroy diversity only when … information that reveals a party's role [becomes available] for the first time after the filing of the Complaint").

The second § 1447(e) factor is whether the plaintiff has been dilatory in seeking the amendment.  Careful examination of the sequence of events plainly shows no dilatoriness on

---

[8]  Both parties' briefs attempt to litigate the merits of Starnes' claims against McAuliffe at this time.  To be sure, the strength or weakness of these claims is an appropriate consideration under § 1447(e).  *See, e.g., Smith*, 229 F. Supp.2d at 1280 ("An additional factor in the analysis of whether a plaintiff's purpose in adding a non-diverse defendant is to defeat subject matter jurisdiction is a consideration of the relative merits or strength of the plaintiff's claim against the diversity destroying defendant.").  In that regard, defendants argue that these claims are meritless because McAuliffe included the words "GOS Operator, LLC" below his signature, which should have tipped off Starnes that he was signing the Letter solely on behalf of that entity.  In defendants' view, if Starnes had wanted clarification from McAuliffe as to the particular entities for which he was authorized to enter that agreement, it was incumbent on Starnes to make appropriate inquiry, which it never did.  By contrast, Starnes points out that the Letter unequivocally indicated that Starnes would be representing not just GOS Operator, but all of the listed entities (including, among others, GOA Operator, GO ATM, Mission Health and the individuals Feuer and Crino).  In Starnes' view, this critical circumstance imparted a duty on McAuliffe to disclose to Starnes that he was not binding (and had no authority to bind) the other defendants to the terms of the Letter, which duty was not discharged by this cryptic, unexplained inclusion of the words "GOS Operator" under his name.  At this stage, for purposes of the § 1447(e) analysis, this Court will not "delv[e] into an extensive analysis of the evidence," *Smith*, 229 F. Supp.2d at 1281, or opine as to the ultimate likelihood of success of the claims against McAuliffe.  In this posture, it suffices to find – and the Court does find – that Starnes' new causes of action against McAuliffe are not so weak or ephemeral as to be indicative of an improper diversity-destroying purpose.  Stated differently, whatever their ultimate merit may or may not be, these are real, serious, substantial claims, not fanciful trumped-up theories designed to help the plaintiff escape an unwanted federal forum.  Thus, examination of the merits of Starnes' proposed claims against McAuliffe does not suggest that they are being interposed solely for the purpose of destroying federal jurisdiction; rather, those claims possess sufficient weight and heft that they cannot be lightly swatted aside as frivolous, insubstantial or otherwise necessarily doomed to failure.

Starnes' part in seeking to join McAuliffe as a party defendant. Again, the key information that animated plaintiff's claims against McAuliffe was not known to Starnes until June 8, 2012, the date on which GOA Operator, GO ATM, and other defendants (not including GOS Operator) filed their motions to dismiss in state court. On that same date, defendants removed the case to federal court. Barely a month after Starnes received that information, and prior to any substantive activity in this forum, Starnes moved to amend its pleading to state new claims against McAuliffe. These circumstances demonstrate that Starnes acted with reasonable diligence in attempting to interpose claims against McAuliffe once it learned of facts that it contends show his role in the alleged suppression of material facts (*i.e.*, failure to disclose that he lacked authority to bind anyone other than GOS Operator to the Letter).[9] Given Starnes' promptness in moving to amend upon receipt of the information on which it predicates its claims against McAuliffe, the Court readily finds that this factor militates in favor of allowing joinder of the diversity-destroying defendant at this time.

The third § 1447(e) factor is whether the plaintiff will be significantly injured if the amendment is not allowed. To be sure, this case does not present a circumstance in which Starnes will be deprived of complete relief unless this amendment is granted.[10] After all, if the diversity-destroying amendment is denied, then Starnes still has a remedy, to-wit: It may file suit

---

[9] In arguing otherwise, defendants maintain that Starnes "knew the identity and role McAuliffe played in signing the engagement letter well before the original complaint was filed and the case was removed." (Doc. 13, at 15.) True enough, Starnes obviously knew in December 2011 that McAuliffe had signed the Letter. But Starnes never knew that McAuliffe lacked authority to bind anyone other than GOS Operator, and that he never intended to bind anyone other than GOS Operator, to that Letter (even though the Letter listed the representation as extending to a host of other entities and persons) until it received the June 8 affidavits in support of defendants' motions to dismiss. The facts set forth in those affidavits form the centerpiece of Starnes' proposed claims against McAuliffe. Defendants cannot reasonably dispute that Starnes was unaware of those facts until June 2012, or that Starnes moved to amend its Complaint to assert claims against McAuliffe within weeks thereafter. Accordingly, defendants' position that Starnes had all the information it needed to sue McAuliffe from the inception of this case is factually inaccurate, and ignores the central role of the June 8 state-court affidavits as the factual and logical cornerstone of Starnes' proposed amendment herein.

[10] When applying this factor, many courts have focused on the "complete relief" aspect. *See, e.g., Jones v. Rent-A-Center East, Inc.*, 356 F. Supp.2d 1273, 1276 (M.D. Ala. 2005) ("In analyzing this factor, this court generally attempts to determine whether a plaintiff can be afforded complete relief in the absence of the amendment.").

against McAuliffe in state court, and maintain parallel litigation against the other defendants in this forum. Through such a two-headed litigation approach, Starnes could indeed obtain complete relief. But at what cost? The redundancy, duplication of effort and expense, and multiplication of proceedings inherent in such parallel litigation is an injury to plaintiff that certain courts have deemed sufficient to satisfy this factor. *See Holiday Isle*, 2008 WL 1756369, at *3 ("While plaintiff may be able to file against [the non-diverse defendants] in a separate lawsuit, the inefficiency of proceeding in parallel forums and the desirability of providing complete relief in one lawsuit" support a finding "that the third factor weighs in favor of allowing the amendment."). In short, while Starnes will not be "significantly injured" if the amendment is disallowed (in terms of being precluded from obtaining complete relief), it will be injured by being forced through the inefficiency, effort and expense of pursuing parallel litigation on the same underlying facts in two different fora.[11] On balance, then, this factor is either neutral or weighs slightly in favor of allowing the amendment.

Fourth and finally, the Court examines any other factors that bear on the equities. For their part, defendants emphasize that allowing the amendment would impair their "right to choose between a state or federal forum when complete diversity exists." *McReynolds*, 2005 WL 2146034, at *4. In the context of this case, however, that equitable consideration is not compelling. After all, this action would not have been removable in the first place had Starnes known at the outset that which it knows now (*i.e.*, that McAuliffe and defendants maintain that McAuliffe was not empowered to bind anyone other than GOS Operator to the Letter – even though the Letter listed numerous other individuals and entities such as GOA Operator, GO

---

[11] Defendants would ascribe this inefficiency to Starnes' own errors or omissions in failing to sue McAuliffe in the first place. In the context of this case, however, this argument is both unduly harsh and outright unfair. Again, this is not a case in which the plaintiff possessed all the necessary facts to support the claim against the non-diverse defendant at the time of filing the initial complaint, but simply overlooked naming him as a defendant until removal of the case to federal court. To the contrary, Starnes did not have the facts it needed to support its proposed claims against McAuliffe until the motions to dismiss were filed in state court, an event which obviously post-dated the filing of the Complaint. So if Starnes were saddled with the inefficiency and expense of pursuing multiple parallel lawsuits to obtain relief for the same injury, it would bear these burdens not because of any culpability or oversight on its part, but because it lacked the facts it needed to justify suing McAuliffe until after there was already a pending lawsuit in federal court. That distinction matters, for purposes of the equity-balancing inquiry that this Court is charged with making under § 1447(e).

ATM and Mission Health as parties to the representation – without ever alerting Starnes that he could not bind and was not binding them).  In other words, Starnes has made a persuasive showing that, if it had been aware of the facts presented in the June 8 affidavits back when it filed this action, it would have sued McAuliffe along with the other defendants.  And of course, had Starnes brought claims against the non-diverse McAuliffe in the first place, the other defendants would have had no right to choose between a state and federal forum because no complete diversity would have existed.  Under the circumstances, defendants' choice of forum is a mere fortuity that is not entitled to dispositive weight.[12]  Moreover, countervailing equities concerning the expense, inconvenience and inefficiency of forcing Starnes to maintain parallel suits in two different fora (one against McAuliffe, the other against all other defendants), through no fault of its own, favor allowing joinder.  Under the path advocated by defendants, Starnes would be obliged to sue McAuliffe separately in state court, the same issues would be litigated twice, and there would be the potential for inconsistent outcomes and the certainty of higher cost and duplicative expenditure of litigant and judicial resources.  Such redundancies would benefit no one.  Thus, the Court is of the opinion that the equities in this case favor allowing Starnes to join the non-diverse defendant under § 1447(e).

**III.    Conclusion.**

For all of the foregoing reasons, the undersigned exercises his discretion under § 1447(e) in favor of granting plaintiff's Motion for Leave to File Amended Complaint.  This is not a case in which the plaintiff seeks to amend its pleading post-removal to join a non-diverse defendant for the purpose of destroying federal jurisdiction and frustrating defendants' right to select a federal forum.  Rather, this is a case in which plaintiff did not obtain the information on which its claims against the non-diverse defendant are founded until contemporaneously with defendants' removal to federal court.  Upon receipt of this information, plaintiff took reasonably prompt steps to amend the Complaint to assert colorable, non-frivolous, and substantial claims against the non-diverse defendant.  That the proposed amendment will result in the loss of diversity jurisdiction is unfortunate, but not inequitable under the circumstances presented here.

---

[12]    *See Holiday Isle*, 2008 WL 1756369, at *4 ("While the court recognizes Clarion, Inc.'s interest in proceeding in federal court, the court believes that had the relevant facts been known to plaintiff prior to the filing of the original Complaint, defendant would have had no basis for removal.").

Moreover, the benefits to allowing the amendment in terms of efficiency and judicial economy are manifest, inasmuch as it will allow Starnes to pursue all of its claims against all defendants in a single action, rather than splitting them into a pair of parallel lawsuits proceeding in two different courts, with all of the resulting inefficiencies, redundancies, and potential discrepancies for litigants, witnesses and courts alike.

Accordingly, the Motion for Leave of Court to File Amended Complaint (doc. 4) is **granted**.  The proposed First Amended Complaint appended to the Motion as Exhibit 1 is deemed to be the operative pleading in this case.  On its face, that First Amended Complaint (and particularly its joinder of new defendant Gerald B. McAuliffe, who is an Alabama citizen, just as plaintiff is) negates diversity jurisdiction.  Federal subject-matter jurisdiction is lacking.  Pursuant to 28 U.S.C. § 1447(e), the Motion to Remand (doc. 5) is **granted**, and this action is hereby **remanded** to the Circuit Court of Mobile County, Alabama for further proceedings.

DONE and ORDERED this 5th day of September, 2012.

s/ WILLIAM H. STEELE  
CHIEF UNITED STATES DISTRICT JUDGE